UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

UNIVERSAL MAP ENTERPRISES, INC.,

        Debtor.

_____/

Case No. DL 07-06547
Hon. Scott W. Dales
Chapter 7

**OPINION REGARDING TRUSTEE'S OBJECTION TO CLAIM**

A landlord, 1900 W.N.H Associates, Ltd. ("Creditor"), filed a claim arising from the termination of its commercial real estate lease with the Debtor, Universal Map Enterprises, Inc. (the "Debtor"). See Claim No. 76 (the "Claim"). On June 10, 2009, Chapter 7 Trustee Kelly M. Hagan ("Trustee") filed her objection to the Claim (DN 529, the "Objection"), arguing that the Creditor overstated its claim by misapplying the "statutory cap" prescribed in 11 U.S.C. § 502(b)(6). The Creditor filed a response (DN 544, the "Response"), and the court heard argument on the Objection on August 20, 2009. The Creditor and the Trustee agreed on the material facts, but disagreed on how to calculate the statutory cap under Section 502(b)(6).

The material and undisputed facts are as follows. Prepetition, the Debtor and the Creditor entered into a commercial real estate lease that the Debtor breached by failing to pay prepetition rent in the amount of $38,393.83 (the "Prepetition Arrearages"). Postpetition, the Debtor's bankruptcy estate failed to pay rent in the amount of $3,241.12 (the "Postpetition Arrearages"). The parties agree that the Creditor's lease rejection damage claim, putting aside mitigating offsets and the statutory cap for the moment, is $670,615.59 (the "Rejection Damages"). The parties also agree that the Creditor had a state law duty to mitigate damages, which it did by

accepting postpetition rent from the estate and a third-party lessee in the amount of $121,850.37

("Postpetition Rent").   Finally, the parties agree that the Creditor is holding $12,905.50 as a

security deposit (the "Security Deposit").

In view of the undisputed facts, the Creditor's counsel helpfully framed the issue as

follows:

> First, whether proceeds flowing from mitigation of the Landlord's rejection damages—the $121,850.37 in post-petition rent—are properly deducted from the Claim before or after the statutory cap is applied. Second, whether the security deposit should be deducted before or after the statutory cap is applied.

See Response, at ¶ 4.   At oral argument, the parties agreed that the court should determine the

allowable amount of the Claim under Section 502(b)(6), and then reduce that claim, dollar for

dollar, by the $12,905.50, security deposit.   In their papers, the parties evidently agreed that the

Sixth Circuit's decision in In re Highland Superstores, Inc., 154 F.3d 573 (6th Cir. 1998),

controls the outcome of this dispute, though they disagreed about the teaching of that case.

The crux of the Highland Superstores opinion, insofar as the present controversy is

concerned, is easily stated:

> [W]e adopt the widely accepted rule that a lessor's damages arising out of a debtor's lease rejection are determined in accordance with the terms of the debtor's lease and applicable state law, and then are limited by application of section 502(b)(6).

In re Highland Superstores, Inc., 154 F.3d at 581.   Because the parties agree that this case

controls the outcome of this claim objection, the only remaining issue is how to apply the

statutory cap as interpreted in Highland Superstores or, stated differently, what does it mean to

deduct the Postpetition Rent before applying the statutory cap?

The Trustee contends that <u>Highland Superstores</u> requires the Creditor to deduct the Postpetition Rent from the "rent reserved" during the one-year period in Section 502(b)(6), and that the Creditor failed to make this reduction: "In calculating the amount of rent due for the period of one year after the petition date, claimant did not take into consideration the rent that was paid during this one year period of time." <u>See</u> Objection, at ¶ 5.  Under this view, the Creditor's damages should be capped at $97,622.88 -- the result of subtracting the Postpetition Rent from the "rent reserved" under the lease for the one-year period.

The Creditor contends, in contrast, that under <u>Highland Superstores</u> and other authorities cited in the Response, the Creditor first calculates the breach of lease damages according to lease terms, and reduces this figure by the amount of mitigation -- the Postpetition Rent in this case. More specifically, the Creditor contends that damages arising from the lease termination (before mitigation) would be $670,615.59, and from that figure the Creditor deducts the Postpetition Rent ($121,850.37) in order to comply with its duty to mitigate damages.  Then, having determined the amount of its rejection damages claim before applying the cap, the Creditor asks the court to compare that uncapped amount ($548,765.22) with the statutory cap, in this case one year's worth of rent ($193,864.92).  Because the uncapped amount exceeds the statutory cap, the statutory cap is the allowable amount of the Creditor's Claim.  Taking into account the prepetition and postpetition arrearages, and applying the Security Deposit, the Creditor asserts an unsecured claim in the amount of $222,594.37.

The court concludes that the only meaningful way to deduct the mitigation *before* applying the statutory cap, consistently with <u>Highland Superstores</u> and the Bankruptcy Code, is to calculate the Creditor's claim as the Creditor did in this case because this approach respects the distinction between the statutory term "claim" and its allowance.

But for the bankruptcy case, the Creditor would have a claim under the lease and applicable state law in the amount of $548,765.22.  Given the bankruptcy, however, Congress caps lessors' state law claims using a formula premised on the lease terms at issue. Congress provided for special treatment of lease claims because the termination of long-term leases may give rise to substantial contract damage claims that could overwhelm the unsecured creditor class.  Section 502(b)(6) is the legislative response to the problem.

To determine the amount of a lessor's allowed claim, the court must first determine the amount of the lessor's "claim," which the Bankruptcy Code defines as a "right to payment,"[1] and then consider the extent to which the "claim" exceeds the statutory cap. To the extent the claim exceeds the statutory cap, the court must disallow it.  See 11 U.S.C. § 502(b)(6).

Under state law, a lessor generally has no "right to payment" to the extent that it has mitigated its damages by, for example, re-letting the premises or accepting rent from the estate. The law abhors double-recovery.  Because a lessor has no right to payment for amounts already received, *i.e.*, no right to payment to the extent it has mitigated damages, by definition its "claim" must already reflect the mitigation. See 11 U.S.C. § 101(5).  A lessor has a claim (determined under non-bankruptcy law), and its allowance is determined or capped under Section 502(b)(6).  If the court were to reduce the one-year "rent reserved" by the Postpetition Rent, yet be faithful to the definition of "claim," the lessor would be accounting for the mitigation twice.  The law also abhors forfeiture.

The court concludes that upon timely objection to a lessor's rejection damages claim, a lessor must account for any mitigation in establishing the amount of the claim or "right to payment," and must then compare the state law claim (as mitigated) with the statutory cap (without reducing the "rent reserved" by the mitigation proceeds).  In the court's opinion,

---

[1] See 11 U.S.C. § 101(5).

therefore, the Bankruptcy Code accounts for the mitigation of damages at the first step of the inquiry by determining the amount of the claim as a matter of non-bankruptcy law. Section 502(b)(6) requires the court to compare the lessor's state law "claim" (which, by definition, already accounts for mitigation), with the "rent reserved" under the lease (which does not).

Pursuant to Section 502(b)(6)(A), therefore, the Creditor's lease rejection claim is capped at $193,864.92, the amount of one year's rent reserved under the lease. To this figure, of course, the court must add the Prepetition Arrearages ($38,393.83) and the Postpetition Arrearages ($3,241.12), to arrive at the allowed amount of the Creditor's claim, $235,499.87, which claim is secured to the extent of the Security Deposit ($12,905.50).

Although the Creditor has not sought relief from the stay to set off or otherwise apply the Security Deposit, the Trustee concedes the propriety of the setoff, and no purpose would be served by imposing the expense and delay associated with a lift stay proceeding. See Fed. R. Bankr. P. 1001. Accordingly, the court agrees with the Creditor, and it shall have, an allowed unsecured claim in the amount of $222,594.37. The Trustee's Objection will be overruled in a separate order.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: August 25, 2009**